UPLAND REALTY COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

(Supreme Court, Appellate Term, First Department, March, 1917.)

Title — when vested in city of New York — taxes — condemnation proceedings — pleading — actions — judgments — Greater New York Charter, §§ 914, 990.

On April 3, 1913, pending proceedings, as authorized by section 990 of the Greater New York Charter, to acquire title by condemnation to certain premises, including those of plaintiff, for street purposes the board of estimate and apportionment adopted a resolution declaring that upon May 1, 1913, the title in fee to each and every piece or parcel of land lying within the lines of a certain street should be vested in the city. Pursuant to section 914 of said charter, as amended in 1911, the taxes for the first half of 1913 became due and payable May 1, 1913, and a lien upon real estate subject to taxation. Plaintiff upon receiving payment of an award in the condemnation proceedings, at the request of the city

comptroller, paid to the city the tax for the first half of the year 1913, with interest, upon its land taken in said condemnation proceedings, under a stipulation between plaintiff and the city to the effect that the taxes so paid were paid under protest and without prejudice to plaintiff's right to recover the amount thereof, and interest, or without operating as a waiver of plaintiff's right to enforce payment of the award, without paying the tax. In an action to recover the amount of taxes so paid, *held,* that the tax was not due and payable before May 1, 1913, and for that reason there could be no counterclaim or set off in favor of the city against the award due plaintiff.

That there could be no question that plaintiff's title to the land in question ceased to exist April 30, 1913, and presumably the award granted to it was made on that basis.

That the lien, charge or claim for the said taxes for the first half of the year 1913 against said property must be regarded as affecting only the city which became its owner on May 1, 1913.

That neither upon the theory that the tax became a charge on March 28, 1913, when the assessment rolls were finally completed and delivered to the receiver of taxes, with direction for collection of all taxes set forth therein, plaintiff being then the owner of the property, nor upon the theory that plaintiff was such owner on May 1, 1913, was defendant entitled to deduct the tax from the award due to plaintiff.

That the judgment in favor of defendant dismissing the complaint on the pleadings should be reversed, with costs, and judgment directed in favor of plaintiff for the amount claimed, with interest and costs, together with costs in the court below.

APPEAL from judgment of the Municipal Court of the city of New York, borough of Manhattan, ninth district, in favor of the defendant, dismissing the complaint on the pleadings.

Philip B. La Roche, Jr., for appellant.

Lamar Hardy, Corporation Counsel (William H. King and David Robson, of counsel), for respondent.

Supreme Court, Appellate Term, March, 1917.   [Vol. 99.

PHILBIN, J.   The plaintiff set forth the following facts: Prior to the 1st of May, 1913, the appellant was the owner of certain premises situated in the borough of The Bronx, city of New York, and designated on the tax maps as block 2872, lot 100.   Before that date, and on the 14th of December, 1911, the city instituted proceedings to acquire title by condemnation, for street purposes, to that portion of the premises lying within the lines of West One Hundred and Seventy-second street, as laid out as a proposed street on the map. Pending these proceedings, as authorized by section 990 of the Greater New York Charter, the board of estimate and apportionment on the 3d of April, 1913, adopted a resolution declaring " that upon the first day of May, 1913, the title in fee to each and every piece or parcel of land lying within the lines of West 172nd Street * * * shall be vested in the City of New York."   Upon said 1st day of May, 1913, the taxes for the first half of that year became due and payable, and a lien upon real estate subject to taxation, pursuant to the provisions of section 914 of the Greater New York Charter, as amended by Laws of 1911, chapter 455.   This section provides that the receiver of taxes, upon receipt of the assessment rolls, shall give public notice by publication " that such assessment rolls have been delivered to him and that all taxes shall be due and payable at his office in the said respective borough as follows: All taxes upon personal property and one-half of all taxes upon real estate shall be due and payable on the first day of May, and the remaining and final one-half of the taxes on real estate shall be due and payable on the first day of November.   All taxes shall be and become liens on the real estate affected thereby on the respective days when they become due and payable, as hereinbefore provided, and shall remain such liens until paid."   The

remainder of the section allows for payment in advance on the first day of May of the second half year's tax which becomes due and payable and a lien on November first, with a rebate for such prepayment at the rate of four per cent per annum.  It is further alleged that pursuant to the resolution of the board of estimate and apportionment and the statutes in such cases made and provided the city on the 1st of May, 1913, become seized in fee of all the estates, rights, titles and interests in said portion of West One Hundred and Seventy-second street, including the said estate of plaintiff, and has so continued, and plaintiff has had no interest or estate therein since the 30th day of April, 1913.  On or about the 11th day of October, 1915, an award having been duly made and confirmed to plaintiff by the commissioners of estimate for its land in the bed of West One Hundred and Seventy-second street, the plaintiff received payment thereof from defendant.  At the request of the comptroller of the city, the plaintiff at the same time paid to defendant the tax for the first half of the year 1913, together with interest thereon upon said land, the amount so paid being the sum of ninety-six dollars and forty-five cents.  Such payment was made pursuant to a stipulation between plaintiff and defendant.  The stipulation provided, in effect, that the taxes so paid were paid under protest and without prejudice to plaintiff's right to recover the amount thereof and interest, or without operating as a waiver of its right to enforce payment of the award without paying the tax.  The complaint further states that the tax for the first half of the year 1913 did not become a lien upon the said premises until the 1st of May, 1913, at which time defendant was or had become vested with the title thereto, and after plaintiff had ceased to be the owner

thereof, or of any estate therein. The usual allegation of service of notice of claim upon the city follows, and the plaintiff demands judgment for ninety-six dollars and forty-five cents with interest.

The further facts which are set forth in the answer show that in the assessment rolls for the year 1913 there was included the tax for the said lot 100 and that on the 28th of March, 1913, the board of aldermen of the city of New York caused the assessment rolls of the borough of The Bronx, as finally completed, to be delivered to the receiver of taxes, and directed the collection of all taxes set forth in the rolls. No part of the tax was paid on the 1st of May, 1913, or immediately thereafter, and on or about the 31st of May, 1913, the tax commissioners subdivided said lot in three separate parts so as to separate those portions of the lot remaining in the ownership of the appellant from that which had been acquired by the city, and upon such subdivision the entire tax upon the lot was apportioned among the three subdivisions thus made. After the apportionment of the two parcels remaining to the appellant had been determined, there remained the sum of eighty-two dollars and thirty-five cents, which was carried on the rolls as charged to the premises taken for street purposes.

Upon these facts the appellant claims that it not being the owner of the lot on the first day of May, when the tax became payable and a lien thereon, it was not under a duty to pay the tax and is now entitled to recover the amount deposited under the stipulation. In support of this contention, it urges that on the 1st day of May, 1913, when it is claimed by the defendant that the tax became a lien, the city became seized in fee, pursuant to the resolution of the board of estimate and apportionment, and that prior to that time the

tax did not become due and payable, or a lien upon the lot. It is also pointed out that it never did become a lien upon the premises acquired for street purposes, for the reason that all lands held by the city in trust for street purposes are exempt from taxation. Tax Law, § 4, subd. 3.

The answer substantially admits all the allegations of fact in the complaint, except in so far as it is alleged that the plaintiff was not the owner of the property on the 1st day of May, 1913, and that the tax did not become a lien thereon until the title thereto had become vested in the defendant, and alleges that the tax was a debt due from the appellant to the respondent since the 28th of March, 1913. The defendant sets up two grounds for its contention that the tax became a charge or lien on the property when owned by the plaintiff. It first asserts that the full amount of the taxes for the year 1913 upon the lot in question became a charge prior to the 1st of May, 1913, and hence was properly payable by plaintiff, and no recovery, therefore, can be had. In other words, that, while the tax did not become a lien until that date, it did become on the 28th of March, 1913, a fixed charge upon the property for not only the half payable on the 1st of May, but also for the entire tax, the other half of which was payable in the following November. As this argument is based upon an assumption, solely for the purpose thereof, that plaintiff was not the owner on the 1st day of May, 1913, the reasoning logically would be equally applicable to the second half which became due in November following, or about six months after plaintiff had had its title divested by the city. In brief, instead of deducting merely the first half of the tax for 1913, the comptroller should have deducted the entire tax for the year. Viewed in that

light, the claim must appear to be wholly untenable. In the case of *Doonan* v. *Killilea*, 87 Misc. Rep. 427, cited by defendant, the action was upon a breach of a covenant in a deed that the property was free and clear from all charges, assessments and incumbrances. Prior to the conveyance an assessment had been confirmed. The defendant demurred on the ground that the assessment under the statute did not, in fact, become a lien until six days after the delivery of the deed. The court overruled the demurrer, holding that the confirmation of the assessment was a charge within the *meaning of the covenant against incumbrances,* although there was no lien when the deed was delivered, since ten days had not elapsed after the entry of confirmation in the collector of assessments' books. In so deciding, reliance was placed on *Lathers* v. *Keogh,* 109 N. Y. 583, and *De Peyster* v. *Murphy,* 66 id. 622. While both of these cases, like the *Doonan* case, dealt with the obligations arising upon covenants between vendor and vendee and, therefore, may not be regarded as being wholly applicable to the facts here, yet even if that distinction were not sufficient, they fail to support the defendant's argument. In the *De Peyster* case the covenant in the deed stated that the premises were free and clear of all " *charges,* estates, judgments, taxes, assessments and incumbrances of what nature and kind soever." An assessment had been confirmed at the time the title passed, but had not then been entered in the book of assessments and was not a lien. It was held that the assessment, while not a lien, was fairly embraced within the terms of the covenant. The contract of sale in *Lathers* v. *Keogh, supra,* provided that title was to be closed as of the 1st of September, 1883, in relation to rents, issues and profits, and " calculations and adjustments

of the exact amounts to be paid as to rents, interest, etc.," (sic), were to be made as of that date. Title was closed on the twenty-third of August, and on the twenty-ninth of August the tax on the premises was confirmed. Upon the claim by the vendee that there had been a breach of the covenant, the court interpreted the latter and found it was not the intention of the parties to include the tax in the adjustment to be made as of the first of September, pursuant to the stipulation in the contract. The court found that the tax not having been confirmed on the day of closing, it was not an incumbrance or a charge within the meaning of the covenant and that the stipulation providing for an adjustment as of a date which occurred after the tax was confirmed did not by its terms include the tax. Like *De Peyster* v. *Murphy, supra,* it ascertained the respective rights of the vendor and vendee under the covenant in the deed. Here, there is no covenant to be construed, but the question presented is as to whether the tax was made a lien or charge by law prior to the 1st of May, 1913. In the *Doonan Case, supra,* the assessment was not made " due and payable " on a day specified by the statute, but upon confirmation. In *Lathers* v. *Keogh, supra,* the court said, referring to the confirmation of the tax and transmission to the receiver of taxes for collection: " Until these requirements of the law have been fulfilled the tax is not due or payable, and no lien attaches to the property nor can any legal charge for any tax be said to rest upon it." Although the conclusion reached by the court as to the meaning of the covenant was the basis of its decision, and, as it was not called upon to decide the question here presented, its remarks may not seem to literally apply, yet by a parity of reasoning they may be regarded as opposed to defendant's claim. It held

that no legal charge for any tax could rest upon the real estate until by confirmation it had become *due and payable*. The court was referring to the law as it existed in the year 1883. The present statute expressly provides that "one-half of all taxes on real estate shall be due and payable on the first day of May." Laws of 1911, chap. 455; Charter, *supra*. Under the law as it stood at the time in question here, the confirmation of the tax rolls was simply an ascertainment or determination as to the amounts that would be due and payable on the first of May, and a charge was not created thereby. It follows that the tax was not due and payable before the 1st of May, 1913, and there could not for that reason be any counterclaim or set-off on behalf of the city against the award due the plaintiff.

The second ground upon which defendant relies is that, when the taxes became due and payable and a lien on the first of May, plaintiff was still the owner of the property. It is unnecessary to cite any authority for the familiar rule that fractions of a day are not recognized by law. The defendant asserts that the burden being upon the plaintiff, it was bound to establish that the title vested in the city on the first of May before the tax had become a lien. Except in so far as such a conclusion might be based upon the theory of the burden of proof, there is no sufficient reason given why it should be accepted. The issue to be decided here as to the time of the happening of the two events is not to be determined upon proof of disputed facts, but rests upon the deduction to be drawn from conceded facts. The statute said that the lien should attach on the first of May and the resolution of the board of estimate and apportionment declared that title should vest upon that day. There can be

no question that plaintiff's title to the lot ceased to exist with the 30th of April, 1913, and presumably the award of compensation granted to it on behalf of the defendant was made on that basis. The change in the status of the parties was not procured through any physical act which occurred on the first of May, but became fixed without any overt intervention by reason of the action taken by the legislature and the board of estimate and apportionment long prior to that time. It would, therefore, appear that the lien, charge or claim for said taxes against the property must be regarded as affecting only the city, which had become its owner on the 1st of May, 1913. We think that neither upon the theory that the tax became a charge on March 28, 1913, while the plaintiff was the owner of the property, nor upon the theory that plaintiff was such owner on the 1st of May, 1913, was the defendant city entitled to deduct the tax on the lot from the award due the plaintiff.

Judgment reversed, with thirty dollars costs to appellant, and judgment directed in favor of the plaintiff for ninety-six dollars and forty-five cents, with interest thereon from the 11th day of October, 1915, together with appropriate costs in the court below.

GUY and MULLAN, JJ., concur.

Judgment reversed, with costs to appellants.